IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
PITTSBURGH DIVISION

| | |
|---|---|
| SHAWN DANIELS,<br><br>        Plaintiff,<br><br>vs.<br><br>ALLEGHENY COUNTY, C.O.<br>PARKER, C.O. DONATO,<br><br>        Defendants. | Civil Action No.:<br>2:24-CV-01730-CCW-CBB<br><br>Christy Criswell Wiegand<br>United States District Judge<br><br>Christopher B. Brown<br>United States Magistrate Judge |

**REPORT AND RECOMMENDATION
ON PARTIAL MOTION TO DISMISS ECF No. 5**

**Christopher B. Brown, United States Magistrate Judge**

### I.      Recommendation

This civil action was removed to this Court from the Court of Common Pleas of Allegheny County, Pennsylvania on December 20, 2024. Plaintiff Shawn Daniels, was a pretrial detainee in the custody of Allegheny County Jail ("ACJ"), and alleges that Defendants Allegheny County (the "County"), Corrections Officer Parker ("C/O Parker") and Corrections Officer Donato ("C/O Donato") violated his civil rights when he was physically and sexually assaulted by two other inmates while in ACJ's custody. ECF No. 1-2. The Court has subject matter jurisdiction under 28 U.S.C. § 1331.

Presently pending before the Court is a motion by the County to dismiss Daniels' 42 U.S.C. § 1983 municipal liability claim for failure to state a claim under

1

Fed. R. Civ. P. 12(b)(6). ECF No. 5.  The motion is fully briefed and ripe for consideration. ECF Nos. 6, 10.

For the reasons that follow, it is respectfully recommended that the Court deny the County's motion to dismiss.

**II.    Report**

**a. Background**

According to the Complaint, Daniels was a pretrial detainee at ACJ awaiting trial for DUI charges. ECF No. 1-2 at ¶¶ 1, 10.  Despite having no violent criminal history, he was housed on a maximum-security pod with violent detainees, including his two assailants, Keyjuan King and Kesean Proctor. *Id*. at ¶ 10.  King had previously been convicted of robbery and firearm charges, was previously held in ACJ, and was awaiting trial on weapons and unlawful restraint/false imprisonment charges. *Id*. at ¶ 11.  Proctor had been convicted of possessing a weapon at ACJ in 2022 and was awaiting trial on firearms charges. *Id*. at ¶ 12.

On June 5, 2024 at approximately 6:00 P.M., Daniels returned to his cell after he attended a Christian mass service on his pod. *Id*. at ¶ 13.  At approximately 6:15 P.M., King and/or Proctor motioned for C/Os Parker and/or Donato, who were the correction officers on the pod at the time, to open Daniels' cell door. *Id*. at ¶¶ 13-14.  Despite ACJ policy precluding corrections officers from allowing inmates to access other inmates' cells, and despite knowing that neither King nor Proctor were Daniels' cellmate, C/Os Donato and/or Parker opened Daniels' cell door allowing King and Proctor to enter. *Id*.

Upon entering Daniels' cell, King and Proctor placed a towel on the cell window and began assaulting Daniels with a homemade shank made from a nail attached to a spork. *Id.* at ¶ 15.  Despite ACJ policy precluding inmates from obstructing cell windows and requiring corrections officers to immediately investigate and/or intervene in such situations, C/Os Donato and Parker took no action to investigate or intervene. *Id.*

It is alleged that over a 39-minute period, King and Proctor bound Daniels' hands and legs, stabbed him 37 times, sexually assaulted him, and repeatedly punched and kicked him. *Id.* at ¶ 16.  While doing so, King and Proctor attempted to extort money from Daniels.  At the end of the 39-minute assault, King and Proctor called Daniels' daughter from Daniels' jail tablet and demanded she send them thousands of dollars. *Id.* at ¶ 17.  Daniels' daughter suspected something was wrong and asked to speak to her father. *Id.* at ¶ 18.  In response, King and Proctor continued to beat Daniels and instructed him to tell his daughter to send the money, which he did. *Id.* at ¶ 18-19.  The call cut off and King and Proctor attempted to call Daniels' daughter back several more times. *Id.*

During the 39-minute attack, C/Os Parker and Donato should have completed several cell checks on the pod, should have walked past Daniels' cell at least three times, and should have seen the towel covering the cell window in violation of ACJ policy. *Id.* at ¶ 25. Despite this, it is alleged they took none of these actions and failed to intervene. *Id.* .  At approximately 6:54 P.M., King and Proctor left Daniels' cell, "leaving Daniels to die." *Id.* at ¶ 26.  When this occurred, it is

3

further alleged C/Os Parker and Donato still did nothing to intervene or check on Daniels. *Id.*

It was only after Daniels' daughter told her mother, Nilda Daniels, about the suspected attack that Nilda called the ACJ at approximately 7:00 p.m. *Id.* at ¶¶ 20-21. When she did, she spoke to Officer Remini and advised him that she believed Daniels was being murdered in his cell. *Id.* at ¶¶ 20-21. Officer Remini told Nilda he would contact the officers on the pod, have them check on Daniels, and thereafter contacted C/Os Parker and/or Donato to advise them Daniels was being assaulted and requested they immediately check his cell. *Id.* at ¶¶ 22-23. C/Os Parker and Donato allegedly continued to do nothing to check on Daniels despite having actual knowledge of the assault. *Id.* at ¶ 24.

It is alleged that Daniels remained in his cell for another 30 minutes until Sergeant Maust and C/O Gilland responded. *Id.* at ¶ 27. When they did, Daniels was transported to a hospital where he remained for a week to be treated for life-threatening injuries. *Id.* at ¶¶ 27-28.

C/Os Parker and Donato were disciplined in connection with the attack for their failure to intervene. *Id.* at ¶ 30. King and Proctor were charged with a litany of felonies in connection with the attack, including aggravated indecent assault. *Id.* at ¶ 31.

Daniels claims his assault was not an isolated incident at the ACJ and suggests two similar assaults occurred around the same time he was assaulted. *Id.* at ¶ 32. The same month Daniels was assaulted, another inmate, M.M., was

assaulted in his cell under similar circumstances to Daniels in June 2024. *Id.* at ¶ 33. M.M. was confined for non-violent offenses and was housed on the same pod as Daniels with violent offenders, including M.M.'s assailants. *Id.* at ¶ 34. M.M. was in his cell with the door locked, when another inmate motioned to the corrections officer on the pod to unlock M.M.'s door. *Id.* at ¶ 35. The corrections officer opened the door, three inmates rushed into the cell and held a shank to M.M.'s throat. *Id.* at ¶¶ 35-36. When inside they sexually assaulted M.M. for several minutes while attempting to extort him for money or property. *Id.* at ¶¶ 35-37. The corrections officer would have witnessed the inmates rush into the cell, but refused to intervene. *Id.* at ¶ 37. As with Daniels, M.M.'s assailants were charged with numerous felonies related to the assault. *Id.* at ¶ 38. Daniels also claims, without specifics, that another inmate, M.G., was assaulted in his cell under circumstances similar to both Daniels and M.M. *Id.* at ¶ 39.

In the Complaint, Daniels asserts two causes of action: (1) a Fifth and Fourteenth Amendment failure to protect claim under 42 U.S.C. § 1983 against C/Os Parker and Donato (Count I); and (2) a municipal liability claim under 42 U.S.C. § 1983 against the County for its failure to train and failure to properly classify inmates (Count II). *Id.* ¶¶ 40- 53. Defendants move to dismiss the municipal liability claim against the County only. ECF No. 6.

### b. Standard of Review: Fed. R. Civ. P. 12(b)(6) Failure to State a Claim

A motion to dismiss filed under Rule 12(b)(6) tests the legal sufficiency of the complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The applicable

inquiry under Fed. R. Civ. P. 12(b)(6) is well settled. Rule 12(b)(6) works in conjunction with Rule 8, which requires that a claim for relief contain "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" Fed. R. Civ. P. 8(a)(2), and a complaint can be dismissed for "failure to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). A defendant has the burden of showing that a complaint fails to state a claim. *See Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000) (holding modified by *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003)).

To survive a motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Though 'detailed factual allegations' are not required, a complaint must do more than simply provide 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'" *Davis v. Abington Mem'l Hosp.*, 765 F.3d 236, 241 (3d Cir. 2014) (quoting *Twombly*, 550 U.S. at 555). In sum, the plaintiff "must plead facts sufficient to show that [his] claim has substantive plausibility." *Johnson v. City of Shelby, Miss.*, 574 U.S. 10 (2014).

To assess the sufficiency of a complaint under *Twombly* and *Iqbal*, a court must take three steps: (1) outline the elements the plaintiff must plead to state a claim for relief; (2) peel away allegations that are no more than conclusions and

thus not entitled to the assumption of truth; and (3) look for well-pled factual allegations, assume their veracity, and then determine whether they plausibly give rise to an entitlement to relief. *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012) *abrogated on other grounds as recognized by Fisher v. Hollingsworth*, 115 F.4th 197, 204 (3d Cir. 2024). The court's plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679. A complaint must be dismissed if it merely alleges entitlement to relief without supporting facts. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009).

With that standard in mind, the Court turns to Defendants' motion to dismiss.

### c. Discussion

Daniels asserts a section 1983 municipal liability claim against the County in two respects: First, for its failure to train corrections officers to intervene in inmate-on-inmate assaults; and second for its failure to have a policy that properly classifies inmates and results in non-violent detainees being housed on a maximum-security pod with violent offenders. ECF No. 10 at 2-5. The County argues Daniels has failed to identify a policy or custom of ACJ that violates his constitutional rights with respect to its failure to train or its failure to properly classify inmates. ECF No. 6 at 4-6.

The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and

must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted). Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 145 n.3 (1979).

In *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658 (1978), the Supreme Court of the United States held that "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," the government as an entity is responsible. *Id*. at 694. The facts alleged must plausibly show that the municipality was the moving force of a constitutional violation. *Id*.

Thus, to plead municipal liability under *Monell*, Daniels must allege (1) he possessed a constitutional right of which he was deprived; (2) the County had a policy or custom; (3) the policy or custom 'amount[ed] to deliberate indifference' to that constitutional right; and (4) the policy or custom was the 'moving force behind the constitutional violation.'" *Vargas v. City of Philadelphia*, 783 F.3d 962, 974 (3d Cir. 2015) (quoting *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997)). The policy or custom can either be a formal policy, where a "decisionmaker with final authority 'issues an official proclamation, policy, or edict," *Williams v. Ponik*, 822 F. App'x 108, 112 (3d Cir. 2020) (citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990)), or an "informally adopted" custom. *Beck v. City of*

*Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Monell*, 436 U.S. at 690). Daniels must show a "direct causal link" between the policy and/or custom and his "constitutional deprivation." *Kramer v. City of New Kensington*, No. CIV.A. 13-606, 2015 WL 5672640, at *13 (W.D. Pa. Sept. 25, 2015) (quoting *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 249–50 (3d Cir. 2007)). "'Failure to' claims – failure to train, failure to discipline, or . . . failure to supervise – are generally considered a subcategory of policy or practice liability." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), *rev'd on other grounds sub nom. Taylor v. Barkes*, 575 U.S. 822 (2015).

### i. Failure to Train

The County argues that Daniels failure to train claim should be dismissed as it "does not identify a specific training that the County failed to provide or that any such training exists that would reduce the risk of inmate-on-inmate violence.". ECF No. 6 at 5.

A municipality's "decision not to train certain employees about their legal duty to avoid violating citizens' rights may rise to the level of an official government policy for purposes of [section] 1983. A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (cleaned up). For a failure to train claim under section 1983 against a municipality, a plaintiff must allege either a "pattern of similar constitutional violations by untrained employees" *id*. at 62 ("pattern" based section 1983 failure to train claim), or if no pattern is alleged, "the need for more or

9

different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989) ("single-incident" based section 1983 failure to train claim). To state a claim for either a pattern or a single-incident based section 1983 failure to train claim, the plaintiff must allege "that the deficiency in training actually caused" the constitutional violation. *Harris*, 489 U.S. at 379.

      Daniels' allegations more than adequately state a failure to train as the direct cause or moving force behind his injuries arising from the failure to protect him from inmate violence. He alleges that his assault was the direct result of the County's failure to train corrections officers on inmate safety and prevention of, and intervention in, inmate-on-inmate assaults. ECF No. 1-2 at ¶ 49. He further adequately alleges that the need for training was so obvious given the pattern of violations from the two identical attacks that occurred in the same month as Daniels was attacked. *Id*. at ¶¶ 33-39. *See Board of County Com'rs of Bryan County, Okl.*, 520 U.S. at 407 ("If a program does not prevent constitutional violations, municipal decisionmakers may eventually be put on notice that a new program is called for. Their continued adherence to an approach that they know or should know has failed to prevent tortious conduct by employees may establish the conscious disregard for the consequences of their action—the 'deliberate indifference'—necessary to trigger municipal liability."). Given this, Daniels has sufficiently alleged enough facts to raise a reasonable expectation that discovery

may reveal evidence to support his failure to train claim against the County. Accordingly, it is respectfully recommended the Court deny Defendants' motion to dismiss Daniels' failure to train claim against the County.

### ii. Failure to Properly Classify

The County next argues Daniels' claim that it failed to properly classify inmates is "conclusory" and does not "set forth any specific basis for such a claim other than that inmate-on-inmate assaults have occurred" and "fail[s] to plead how 'proper' classification would have prevented such an assault." ECF No. 6 at 6.

At the pleading stage, Daniels has adequately alleged a County policy or practice of housing pretrial detainees with no history of violence on a maximum-security pod with violent offenders in violation of his constitutional right to be free from inmate violence. *See Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (prison officials have a constitutional duty to protect prisoners from violence at the hands of other prisoners); *Hightower v. City of Philadelphia*, No. CV 21-4075-KSM, 2022 WL 1121418, at *5 (E.D. Pa. Apr. 14, 2022) (inmate stated a *Monell* claim by identifying prison practices to house inmates with a history of violence or severe mental health illness in cells with other inmates); *Williams v. Delaware Cnty. Bd. of Prison Inspectors*, No. CV 17-4348, 2018 WL 4558190, at *11 (E.D. Pa. Sept. 20, 2018) (same and addressing pretrial detainees). Daniels alleges he was a non-violent detainee, was housed on the maximum-security pod with his assailants who were violent offenders, one of whom had been previously convicted of possessing a weapon at ACJ in 2022, the County knew the assailants were dangerous, and this

11

policy created the opportunity for Daniels to be attacked. ECF No. 10 at 4-5. At this stage, Daniels has sufficiently alleged enough facts to raise a reasonable expectation that discovery may reveal evidence to support a finding the County had an unconstitutional housing policy or practice with respect to non-violent detainees. Accordingly, it is respectfully recommended the Court deny Defendants' motion to dismiss Daniels' failure to properly classify claim against the County.

### III. Conclusion

Based on the foregoing, it is respectfully recommended that the Court deny the County's motion to dismiss.

Therefore, pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72, and the Local Rules for Magistrates, the parties have until **August 11, 2025** to object to this report and recommendation. Unless otherwise ordered by the District Judge, responses to objections are due fourteen days after the service of the objections. Failure to file timely objections will waive any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n.7 (3d Cir. 2011).

DATED this 28th day of July, 2025.

                                              Respectfully submitted:

                                              s/Christopher B. Brown
                                              United States Magistrate Judge

cc:    Honorable Christy Criswell Wiegand
       United States District Judge
       *via CM/ECF electronic filing*

       Counsel of record

*via CM/ECF electronic filing*